**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
DEIRDRE PRICE,

                              Plaintiff,

            -against-

COUNTY OF NASSAU, PORT WASHINGTON
POLICE DEPARTMENT, and JOHN DOES
#1-10,

                           Defendants.
-------------------------------------------------------------X

**MEMORANDUM**
**AND ORDER**

CV 18-4393 (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.**    **PRELIMINARY STATEMENT**

*Pro Se* Plaintiff Deirdre Price ("Plaintiff") commenced this action against Defendants

County of Nassau ("County"), the Port Washington Police Department ("PWPD"), and John

Does #1-10 (collectively, "Defendants") alleging various constitutional violations arising from

her arrest and prosecution in state court. *See generally* Complaint ("Compl.") [DE 1].

Presently before the Court are: (1) the Plaintiff's motion for leave to amend the

Complaint; (2) the County's motion to dismiss the Complaint; and (3) the PWPD's motion to

dismiss the Complaint. *See* Plaintiff's Memorandum of Law in Support of Motion to Amend

("Pl.'s Mem.") [DE 65]; County's Notice of Motion to Dismiss [DE 68]; PWPD's Notice of

Motion to Dismiss [DE 75]. For the reasons which follow: (1) the Plaintiff's motion for leave to

amend the Complaint is GRANTED, in part, and DENIED, in part, to the extent set forth in this

Memorandum and Order; (2) the County Defendant's motion to dismiss is GRANTED; and (3)

the PWPD's motion to dismiss is GRANTED. Plaintiff is directed to file an amended complaint

within 21 days of entry of this Order.

## II.   BACKGROUND

### A.   Allegations in Plaintiff's Proposed Amended Complaint

The following facts are taken from Plaintiff's proposed amended complaint ("PAC") and are accepted as true for purposes of the instant motions.  *See Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 176 (2d Cir. 2013).  However, the Court does not credit conclusory statements, legal conclusions, or unwarranted deductions.  *Johnson v. Target Corp.*, No. 17-CV-7535, 2019 WL 1227784, at *1 (E.D.N.Y. Feb. 12, 2019), *report and recommendation adopted sub nom*. *Johnson v. Target Corps.*, No. 17-CV-7535, 2019 WL 1253467 (E.D.N.Y. Mar. 13, 2019) (citing *Alston v. Sebelius*, No. 13-CV-4537, 2014 WL 4374644, at 8 (E.D.N.Y. Sept. 2, 2014) (explaining that when analyzing the sufficiency of a complaint, "mere conclusions of law or unwarranted deductions need not be accepted")).  Moreover, because Plaintiff is proceeding *pro se*, the Court is obligated to construe her pleadings liberally "to raise the strongest arguments that they suggest."  *See McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017).

Plaintiff alleges that her daughter, Dominique Price, has been "verbally, emotionally, and physically abusive" with Plaintiff for several years.  *See* Proposed Amended Complaint ("PAC") at 8-9 [DE 65-1].[1]  In July 2016, Plaintiff moved with her daughter to Port Washington located in the Town of North Hempstead, New York.  *Id*. at 9-10.  Shortly after Plaintiff and her family moved to Port Washington, Plaintiff's daughter assaulted her on August 10, 2016.  *Id*. at 10.  Plaintiff reported this incident to the PWPD and filed a police report with Detective Raymond Ryan ("Det. Ryan").  *Id*.  As a result of the August 10, 2016 incident, Plaintiff received an Order

---

[1]     For ease of reference and because the allegations in Plaintiff's PAC are not consistently organized into consecutively-numbered paragraphs, the Court references Plaintiff's allegations by the ECF page number in her PAC.

of Protection against her daughter from the New York State Supreme Court, Nassau County, which expired on January 31, 2018. *Id.* Plaintiff also received an Order of Protection against her daughter from the New York State Family Court, Nassau County, which expired on February 10, 2017. *Id.* Plaintiff's daughter was mandated to attend anger management classes, but allegedly never attended those classes. *Id.* at 10-11.

Almost a year later, Plaintiff's daughter assaulted Plaintiff again on both July 6 and 16, 2017. *Id.* at 11-12. On July 24, 2016, Plaintiff arrived at the PWPD and advised that she wanted to report a violation of the Order of Protection by her daughter. *Id.* Officer Robert Cavalli ("Cavalli") and Detective Thomas McCarthy ("McCarthy ") proceeded to question Plaintiff, during which time Plaintiff claims Detective McCarthy made "racist remarks" toward her and "racially profiled" her. *Id.* at 12-13. Specifically, Plaintiff claims that Detective McCarthy made a comment about "how he felt that African Americans discipline their children with sticks from the tree." *Id.* at 13. Plaintiff "realized [she] was being racially profiled and [she] was subject to selective enforcement." *Id.* She asked Detective McCarthy and Officer Cavalli whether she could report a violation of the Order of Protection against her daughter and leave. *Id.* Instead, Plaintiff claims she was forced to stay. *Id.* according to Plaintiff, she was "never [] told [she] was a suspect being interrogated or given [her] Miranda warnings or rights … [she] only thought [she] was there as a Domestic Violence Victim to file a violation of [her] Orders of Protections." *Id.*

Plaintiff alleges that Detective McCarthy stated "one of you [are] going to be arrested," to which Plaintiff responded "for what, I did not do anything." *Id.* Detective McCarthy then exited the room where Plaintiff was being questioned and returned with Chief of Police James Salerno ("Salerno") and Sergeant Danny DeVito ("DeVito"). *Id.* Plaintiff was then advised that

she was being arrested and charged with assault and endangering the welfare of a child as a result of a sworn complaint made by Plaintiff's daughter stating that Plaintiff had struck her with a belt and punched her in the face in the presence of her infant child. *Id*. Plaintiff says that she was "in shock" because Chief of Police Salerno and Sergeant DeVito "knew [her] history with [her] daughter." *Id*.

Plaintiff was then detained in a holding cell at the PWPD. *Id*. at 14. While she was detained, Plaintiff alleges she went into shock and "started to feel like [she] was going to pass out." *Id*. Upon notifying a PWPD officer, Plaintiff was taken to the hospital after paramedics were called. *Id*. As she was being transported to the hospital, Plaintiff claims that the officers escorting her saw the bruise marks on her leg from being assaulted by her daughter. *Id*. Plaintiff also claims that she overheard either Officer Cavalli or Officer Brandon Wilson ("Wilson") at the hospital state that Plaintiff should not have been arrested and that officers at PWPD wanted to arrest Plaintiff, despite knowing that she committed no crime and was a victim of domestic violence. *Id*. During her hospitalization, Plaintiff was handcuffed to the hospital bed which "deprived [her] of [her] life and liberty." *Id*.

The next day, Plaintiff was arraigned while in the hospital and a legal aid attorney was present. *Id*. at 15. After she was discharged, she returned home where she noticed that her daughter had moved out and had taken some of Plaintiff's belongings with her -- with the assistance of the PWPD. *Id*. Plaintiff claims this constituted a warrantless search of her home. *Id*. at 15-16.

As a result of the arrest, Plaintiff asserts that her employment and visitation with her daughter's child were jeopardized and that she suffered personal injuries and emotional distress which required medical treatment and counseling, among other things. *Id*. at 18-21.

On September 28, 2017, Plaintiff's daughter assaulted Plaintiff again.  *Id*. at 18-19.
Officer Dwayne McCurty and Sergeant DeVito responded to the scene and prepared a police
report.  *Id*. at 19.  Plaintiff served a Notice of Claim upon the PWPD on October 24, 2017.  *Id*. at
20; Compl. ¶ 5.  On December 6, 2017, Plaintiff provided the Nassau County District Attorney's
Office with a notarized letter from her daughter dated November 29, 2017.  In the letter,
Plaintiff's daughter requested that the charges against Plaintiff be dropped and admitted that
Plaintiff did not commit the crimes she accused her of which resulted in the July 24, 2017 arrest.
*Id*. at 21.  In light of this notarized letter, Plaintiff asserts that her prosecution should have been
"completely dismissed."  *Id*. 21, 25.  Instead, the Nassau County District Attorney's Office
responded that an investigation would be conducted before dismissing the charges against
Plaintiff.  *Id*.  Plaintiff claims the Nassau County District Attorney's Office continued
prosecution of the charges against her "deprived [her] of life and liberty."  *Id.* at 25-26.  On
February 9, 2018, Plaintiff received an adjournment in contemplation of dismissal for the
charges brought against her in connection with the July 24, 2017 arrest.  *Id*. at 22.

According to the Plaintiff, it was improper to arrest and prosecute her because:  (1) the
photos of her daughter's injuries were not consistent with her daughter's accusations; (2) Officer
Wilson and Officer Cavalli "had sworn affidavits saying it was all fabricated"; (3) the officers
who escorted Plaintiff to the hospital saw the bruises on Plaintiff's leg; (4) the Nassau District
Attorney's Office and the PWPD "saw Plaintiff had a valid Order of Protection" and knew her
daughter assaulted her again on September 28, 2017"; and (5) the Nassau District Attorney's
Office and the PWPD "saw … [she] had 'No Record' as of July 24, 2017."  *Id*. at 23-24, 26.

Plaintiff also claims that Officer McCurty "who wrote this falsified report, was the same
Officer present when [Plaintiff's daughter] physically assaulted [her] on September 28, 2017."

*Id*. at 24.  She asserts that the assault and child endangerment charges were false or that those involved should have known they were false because "[Officer Wilson] and [the] Nassau County District Attorney saw [Plaintiff's] grandson in [her] care happy and healthy at the courts hearing and the Christmas Party," and Plaintiff did not observe any marks or bruises on her daughter's face or any visible part of her body prior to July 24, 2017.  *Id*. at 24-25.

Plaintiff claims that the PWPD officers and Nassau County Assistant District Attorney, Diane Peress ("ADA Peress"), "deprived of [her] life and liberty as a Domestic Violence Victim and viciously charged [her] with crimes [she] never committed" and "failed to protect [her] as a Domestic Violence Victim."  *Id*. at 23, 25.  Plaintiff also claims that ADA Peress committed *Brady* violations because:  (1) correspondence from ADA Peress demonstrates that she knew Plaintiff "had a valid Order of Protection and [her] daughter had violated her ACOD because she did not finish her twelve-week Anger Management class," *id*. at 27; and (2) ADA Peress continued to prosecute Plaintiff after she received the "sworn signed affidavit by [Plaintiff's] daughter," *id*. at 25.  Plaintiff maintains that Officers Wilson, Cavalli, and McCurty also committed Brady violations and falsified police reports because they did not list her daughter's prior arrest on August 10, 2016 in any of the police reports they prepared.  *Id*. at 27.  She asserts that "[PWPD] Sergeant Alexander Mott should have been trained to properly correct that error and saw how these reports were false statements."  *Id*.  Finally, Plaintiff contends that "the police report is a defamation of [her] character."  *Id*. at 24.

The caption to the PAC names Nassau County, the PWPD, and John Does #10-10 as defendants to the action.  *See* PAC at 1.  However, Plaintiff's Pro Se Form submitted with the PAC only identifies Andrew Reginald Scott, Esq. and Callan Wright Tauster, Esq., both Nassau County Assistant District Attorneys, as defendants in the action.  *Id*. at 2-3.  Moreover, where

prompted to state "what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials," Plaintiff wrote:

> First Amendment freedom of speech, Miranda Rights, Fourth Amendment-unreasonable searches and seizures, false arrest, warrantless search, warrantless arrest, failure timely release, apprehension of suspect by excessive force, Sixth Amendment-protect right to any attorney and Miranda Rights, Eight Amendment-inmate denied certain privileges, prohibit cruel and unusual punishment, Fourteenth Amendment deprived my life and liberty as a Domestic Violence Victim, due process clause, procedural due process, substantial due process and equal protection clause, brady violations, Violence Against Women Act, conduct that "shock the conscience" or offends the common sense of fair play and decency, illegal interrogation, arrest of minorities, racial profile, selective enforcement of statute of race, falsified evidence, invasion of my privacy, wrongful prosecution, abuse of process, unjustifiable force, [] falsely charged, [] falsely accused, emotion distress, defamation, pain and suffering, jeopardize my job and mental distress

*Id*. at 4.

## B.     Procedural Background

On August 2, 2018, Plaintiff filed a Complaint against Nassau County, the PWPD, and John Does #1-10. *See* Compl.  The Complaint asserted claims for false arrest, malicious prosecution, and *Monell* liability for a failure to train and supervise, pursuant to 14 U.S.C. § 1983, arising from Plaintiff's July 24, 2017 arrest and subsequent prosecution in state court. *See* generally Compl.  Shortly thereafter, the County and the PWPD moved to dismiss the Complaint. *See* DE 4; DE 11.  On February 5, 2019, Plaintiff's counsel filed a motion to withdraw as counsel of record, *see* DE 25, and that motion was granted on April 9, 2019. *See* DE 29; DE 34.  Judge Spatt who was the District Judge assigned to the case at that time provided Plaintiff an opportunity to obtain new counsel and stayed the deadlines related to the motions to dismiss pending resolution of Plaintiff's representation. *See* DE 13; DE 34; DE 36.  After several unsuccessful attempts to have the Court appoint counsel on her behalf, Plaintiff has been proceeding *pro se*. *See* DE 23; DE 40-41; DE 53; DE 62.

This Court conducted an Initial Conference with the parties on August 15, 2019 and set a final briefing schedule for Defendants' motions to dismiss.  *See* DE 51.  The schedule was extended several times at the request of the Plaintiff.  *See* DE 62.  On August 22, 2019, the parties consented to this Court's jurisdiction for all purposes.  *See* DE 53.  Because the motions to dismiss were transferred to this Court when the Consent was filed, Defendants were directed to re-file the motions once they were fully briefed in accordance with this Court's Individual Rules.  *See* August 27, 2019 Electronic Order; DE 62.  As the motions to dismiss were being briefed, Plaintiff filed a motion for leave to amend the Complaint on October 30, 2019.  *See* generally Pl.'s Mem.  Plaintiff seeks leave to amend the Complaint because "[t]he original complaint was drafted by [her] previous lawyers" which "contained insufficient facts … [making] the complaint deficient."  *Id*.  A proposed amended complaint ("PAC") was attached to Plaintiff's motion, which seeks to add new parties, new factual allegations, and additional causes of actions.  *See* Proposed Amended Complaint ("PAC") [DE 65-1].  Defendants separately oppose Plaintiff's motion for leave to amend.  *See* County's Memorandum of Law in Opposition to Motion to Amend ("County Opp'n") [DE 66]; PWPD Memorandum of Law in Opposition to Motion to Amend ("PWPD Opp'n") [DE 74].

On November 8 and 15, 2019, the County and the PWPD filed separate fully briefed motions to dismiss.  *See* County' Memorandum of Law in Support of Motion to Dismiss ("County Mem.") [DE 68-5]; County' Reply Memorandum of Law in Support of Motion to Dismiss ("County Reply.") [DE 68-6]; PWPD Memorandum of Law in Support of Motion to Dismiss ("PWPD Mem.") [DE 77]; PWPD Reply Memorandum of Law in Support of Motion to Dismiss ("PWPD Mem.") [DE 78].  Plaintiff opposes both motions.  *See* Plaintiff's

Memorandum of Law in Opposition to County and PWPD's Motions to Dismiss ("Pl's Opp'n")
[DE 64].

## III.   LEGAL STANDARD

### A.   Rule 15(a)(1) Motion to Amend

Pursuant to Rule 15(a)(1), "[a] party may amend its pleading once as a matter of course

within ... 21 days after service of a responsive pleading or 21 days after service of a motion

under Rule 12(b), (e), or (f), whichever is earlier."  If more than 21days have elapsed, "a party

may amend its pleading only with the opposing party's written consent or the court's leave[,]" but

"[t]he court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2).  "Leave

to amend may properly be denied if the amendment would be futile, as when the proposed new

pleading fails to state a claim on which relief can be granted." *Anderson News, L.L.C. v. Am.*

*Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) (internal citations omitted). The adequacy of an

amended complaint "is to be judged by the same standards as those governing the adequacy of a

filed pleading." *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991); *Vosburgh v.*

*Burnt Hills-Balston Lake Central School Dist.,* 1:18-CV-1003, 2019 WL 315054, at *11

(N.D.N.Y.  Jan. 24, 2019).  Whether to grant leave to amend is a decision squarely within the

district court's discretion. *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 540 (2010) ("[Rule

15(a)] gives a district court discretion to decide whether to grant a motion to amend a pleading

before trial."); *MHANY Mgmt. v. Cty. of Nassau*, 843 F. Supp. 2d 287, 340 (E.D.N.Y. 2012)

(noting that "it is ultimately within the sound discretion of the court whether to grant leave to

amend").

### B.      Rule 12(b)(6) Motions to Dismiss

It is established law in this Circuit that *pro se* filings such as Plaintiff's pleading are to be

liberally construed.  *Shin v. Queens Hosp. Ctr. in Jamaica*, No. 14-CV-7237, 2014 WL 7422664,

at *3 (E.D.N.Y. Dec. 31, 2014).  "[A] *pro se* complaint, however inartfully pleaded, must be held

to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551

U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  The Court must

therefore "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the

strongest arguments that they suggest.'"  *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.

1999) (quoting *Burgos v. Hopkins*, 14 F.3d 878, 890 (2d Cir.1994)).

*Pro se* status, however, "does not exempt a party from compliance with relevant rules of

procedural and substantive law."  *Lomax v. Aegis Funding Corp.*, No. 9-2321, 2010 WL

1633440, at *2 (E.D.N.Y. Apr. 19, 2010) (quoting *Iwachiw v. N.Y. City Bd. of Educ.*, 194 F.

Supp. 2d 194, 202 (E.D.N.Y. 2002)); *Guity v. Uniondale Union Free Sch. Dist.*, No. 15-CV-

5693, 2017 WL 1233846, at *3 (E.D.N.Y. Mar. 31, 2017) ("Plaintiff's status as a *pro se* litigant

does not relieve her of her obligation to adhere to all applicable procedural rules."); *Triestman v.

Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) ("[P]*ro se* status does not exempt a

party from compliance with relevant rules of procedural and substantive law.") (internal

quotations and citations omitted).  Likewise, "mere conclusions of law or unwarranted

deductions need not be accepted."  *Alston v. Sebelius*, No. 13-CV-4537, 2014 WL 4374644, at

*5 (E.D.N.Y. Sept. 2, 2014).

That being said, the general standard of review on a Rule 12(b)(6) motion to dismiss

remains applicable here:  the Court must liberally construe the claims set forth in the Complaint,

accept all factual allegations in the Complaint as true, and draw all reasonable inferences in favor

of the Plaintiff.  *See Aegis Ins. Servs., Inc.*, 737 F.3d at 176; *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).  The Plaintiff must satisfy "a flexible 'plausibility standard.'" *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the [Amended] [C]omplaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007).  The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *see also Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (holding that a complaint must set forth "a plausible set of facts sufficient 'to raise a right to relief above the speculative level'") (quoting *Twombly*, 550 U.S. at 555).  A plaintiff must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937.

In adjudicating a Rule 12(b)(6) motion, the Court must generally limit itself to facts alleged in the operative pleading, which allegations are accepted as true; to documents attached to the operative pleading as exhibits or incorporated into the pleading by reference; to matters of which judicial notice may be taken; and to documents whose terms and effect are relied heavily upon in the operative pleading and, thus, are rendered "integral" to it.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *see ASARCO LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014).  To the extent "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."

Fed. R. Civ. P. 12(d); *see also Wrap-N-Pack, Inc. v. Eisenberg*, No. 04-CV-4887, 2007 WL 952069, at *5 (E.D.N.Y. Mar. 29, 2007).  Importantly, however, "in deciding a motion to dismiss a *pro se* complaint, it is appropriate to consider 'materials outside the complaint to the extent that they are consistent with the allegations in the complaint,' *Alsaifullah v. Furco*, No. 12-Cv-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013), including 'documents that a pro se litigant attaches to his opposition papers.'" *Martinez v. Aycock-W.*, 164 F. Supp. 3d 502, 508 (S.D.N.Y. 2016) (quoting *Agu v. Rhea*, No. 09–CV–4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010)).

"When a plaintiff amends its complaint while a motion to dismiss is pending the court may deny the motion as moot or consider the merits of the motion in light of the amended complaint." *Illiano v. Mineola Union Free Sch. Dist.*, 585 F. Supp. 2d 341, 349 (E.D.N.Y. 2008) (citation and internal quotation marks omitted); *Phillips v. Orleans Cnty.*, 1:18-cv-00752, 2019 WL 3088051, at *4 (W.D.N.Y. July 15, 2019).  Here, the Court elects to consider the merits of Defendants' motions to dismiss in tandem with Plaintiff's motion for leave to amend the Complaint.

Moreover, having reviewed the documents submitted with the parties' motion papers, the Court does not find conversion to a Rule 56 motion necessary here.  Each of the documents submitted is either referenced in the Complaint or PAC, is integral to it, or is something of which the Court may properly take judicial notice.  *See Romero v. Bestcare Inc.,* No. 15-CV-7397, 2017 WL 1180518, at *3 (E.D.N.Y. Mar. 29, 2017) ("On a motion to dismiss, the court may consider documents attached to the complaint, documents incorporated into the complaint by reference and facts of which the court may take judicial notice."); *Cooper v. City of New York*, No. 17-CV-1517, 2018 WL 4762248, at *4 (E.D.N.Y. Sept. 29, 2018) ("The court takes judicial

notice of the Arrest Report, Complaint Report, and the Criminal Court Complaint. It is well established that these documents are matters of public record and, as such, the court may consider them on a motion to dismiss."); *Wims v. N.Y.C. Police Dep't*, No. 10-CV-6128, 2011 WL 2946369, at *2 (S.D.N.Y. July 20, 2011) ("[A] district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including arrest reports, criminal complaints, indictments and criminal disposition data." (citation and internal quotation marks omitted)).  Accordingly, to the extent needed, all documents in the parties' filings are within the scope of consideration on the instant motions to dismiss.

## IV.   DISCUSSION

### A.   Claims against Nassau County

The Complaint alleges that:  (1) the PWPD and John Does, #1-10 were acting as agents of the County, *see* Compl. ¶ 8; (2) the County failed its "duty to supervise, train, educate, control and employ their employees and agents in a reasonably prudent and careful manner," *id*. ¶ 11; and (3) Plaintiff's damages resulted from the County's negligent "hiring, training, supervision, and management of their employees, agents and servants," *id.* ¶ 13.  The PAC omits these allegations and seemingly abandons any claims based on them against the County.  *See generally* PAC.  Nonetheless, construing the PAC liberally, Plaintiff arguably seeks to assert a *Monell* claim against the County based on the allegation that "Sergeant Alexander Mott should have been trained to properly correct that error and saw how these reports were false statements." PAC at 27.

The County contends that the Complaint must be dismissed against it because there is no principal-agent relationship between the County and the PWPD, or the County and the PWPD's employees, as a matter law.  *See* County's Mem. at 9-11; County's Reply 3-4.  Specifically, the

County contends that PWPD is excluded from the County police districts now in existence, pursuant to Nassau County Administrative Code § 8-18.0 and Nassau County Civil Division Act, Article 2 § 305.0.  *Id.* at 9-10.  According to the County, Port Washington operates its own police district, outside the scope and supervision of the Nassau County police district.  The County also contends that the Complaint does not sufficiently allege a *Monell* claim because it does not allege that any policy, custom and/or practice is responsible for the Plaintiff's injuries or that any County employee was negligent in his/her training or supervision of the individuals involved in the conduct which allegedly deprived Plaintiff of her constitutional rights.  *Id.* at 12-14; County's Reply at 4-5.

A municipal defendant "cannot be held liable under § 1983 on a *respondeat superior* theory."  *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978); *see Jones v. Town of E. Haven,* 691 F.3d 72, 80 (2d Cir. 2012).  Rather, a municipal entity may only be held liable under Section 1983 "if the deprivation of the plaintiff's rights under federal law [was] caused by a governmental custom, policy, or usage of the municipality."  *Jones,* 691 F.3d at 80; *see Pipitone v. City of New York,* 57 F. Supp. 3d 173, 194 (E.D.N.Y. 2014) ("[m]unicipalities can only be held liable under § 1983 when they are a 'moving force' behind the constitutional deprivation"); *Hunter v. City of N.Y.,* 35 F. Supp. 3d 310, 322 (E.D.N.Y. 2014) ("[i]n order to sustain a claim for relief pursuant to § 1983 against a municipal defendant, a plaintiff must show the existence of an official policy or custom that caused injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right").  This generally requires a plaintiff to establish that "(1) an official custom or policy [ ] (2) subjected [him or her] to (3) a denial of a constitutional right."  *Ferrari v. Cty. of Suffolk*, 790 F. Supp. 2d 34, 40 (E.D.N.Y. 2011).  The official policy or custom need not be explicit and may be inferred from:

"(1) a formal policy officially endorsed by a municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising [policymaker] must have been aware; or (4) failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Dava v. City of New York*, No. 15-CV-08575, 2016 WL 4532203, at *9 (S.D.N.Y. Aug. 29, 2016) (internal quotation marks and citation omitted).

Assuming Plaintiff has plausibly alleged that she suffered constitutional violations, the bare and conclusory allegation in the Complaint to the effect that the County failed to train or supervise its employees and agents (or the allegation in the PAC that "Sergeant Alexander Mott should have been trained to properly correct that error and saw how these reports were false statements") is insufficient to state a *Monell* claim.  *See* PAC at 27; *LaPietra v. City of Albany Police Dep't*, No. 19-CV-1527, 2020 WL 5891888, at *8 (N.D.N.Y. Oct. 5, 2020), *report and recommendation adopted sub nom. LaPietra v. City of Albany Police Dep't*, No. 19-CV-1527, 2020 WL 7021589 (N.D.N.Y. Nov. 30, 2020) ("Plaintiffs' conclusory allegations that the City of Albany failed to train and supervise defendants, without supporting factual allegations, fails to state a *Monell* claim against the City of Albany that is plausible on its face."); *Wheeler v. Wallkill*, No. 16-CV-7441, 2017 WL 2999503, at *6 (S.D.N.Y. July 13, 2017) (citation omitted) ("Allegations that a defendant acted pursuant to a policy or custom without any facts suggesting the policy's existence, are plainly insufficient."); *O'Callaghan v. City of New York*, No. 16-CV-1139, 2016 WL 7177509, at *9 (S.D.N.Y. Dec. 8, 2016) ("Because Plaintiff fails to point to any non-conclusory plausible factual allegations concerning the policy that resulted in the

deprivation of his rights, the remaining [*Monell*] claim must also be dismissed."); *Gordon v. City of N.Y.*, No. 10-CV-5148, 2012 WL 1068023, at *4 (E.D.N.Y. Mar. 29, 2012) (dismissing *Monell* claim where the plaintiff's "allegation is unsupported by anything other than the facts of what occurred in his particular case"). A "single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *Gaston v. Ruiz*, No. 17-CV-1252, 2018 WL 3336448, at *5 (E.D.N.Y. July 6, 2018) (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)); *see also Deraffele v. City of New Rochelle*, No. 15-CV-282, 2016 WL 1274590, at *17 (S.D.N.Y. Mar. 30, 2016) ("A *Monell* claim cannot go forward based on conclusory claims regarding a single incident without more evidence that connects this incident to a municipal policy or practice.").

Even assuming the Complaint sufficiently alleged a *Monell* claim, it does not appear that the County could constitute the real party interest against which to allege such a claim because the County does not employ the individuals involved in the conduct which purportedly deprived Plaintiff of her constitutional rights. Nassau County Administrative Code § 8-18.0 provides "[t]he County police district now in existence … shall consist of: (1) That part of the county **outside of** any city, village or the Port Washington police district." *See* Scott Decl., Ex. B, Nassau County Administrative Code. The PWPD is established in the Town of North Hempstead and ostensibly operates outside the scope and supervision of the Nassau County police district. *See id*. As such, it appears that the Town of North Hempstead would be the governmental entity which would constitute the real party in interest, not the County. *See Burris v. Nassau Cty. Dist. Attorney*, No. 14-CV-5540, 2017 WL 9485714, at *15 (E.D.N.Y. Jan. 12, 2017), *report and recommendation adopted*, No. 14-CV-5540, 2017 WL 1187709 (E.D.N.Y. Mar. 29, 2017) ("[t]he real party in interest in an official-capacity suit is the government entity

and not the named official") (citing *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 361, 116 L. Ed. 2d 301 (1991)).

Accordingly, the County's motion to dismiss the Complaint is GRANTED.  Because there is no agency relationship between the County and the individuals involved in the conduct which allegedly deprived Plaintiff of her constitutional rights, Plaintiff's claim against the County is dismissed with prejudice.

## B.      Claims against the PWPD

Plaintiff's Complaint alleges that:  (1) PWPD failed its "duty to supervise, train, educate, control and employ their employees and agents in a reasonably prudent and careful manner," *id*. ¶ 11; and (2) Plaintiff's damages resulted from PWPD's negligent "hiring, training, supervision, and management of their employees, agents and servants," *id.* ¶ 13.  The PAC omits these allegations and seemingly abandons any claims based on these allegations against the PWPD. *See generally* PAC.  Nonetheless, construing the PAC liberally, Plaintiff arguably seeks to assert a *Monell* claim against the PWPD based on the allegation that "Sergeant Alexander Mott should have been trained to properly correct that error and saw how these reports were false statements." PAC at 27.

The PWPD contends that the Complaint must be dismissed against it because it is a non-suable entity.  PWPD's Mem. at 14-15.  Alternatively, the PWPD contends that the Complaint does not sufficiently allege a *Monell* claim against it because it does not allege that any policy, custom and/or practice is responsible for the Plaintiff's injuries or that any County employee failed to train or supervise the individuals involved in the conduct that allegedly deprived Plaintiff of her constitutional rights.  *Id*. at 15-16.  The PWPD further contends that the

Complaint does not sufficiently allege a claim for false arrest and malicious prosecution because probable cause existed for Plaintiff's arrest and prosecution. *Id*. at 18-24.

"[U]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002); *see also Ayers v. Suffolk Cty. Dist. Attorney Office Inc.,* No. 20-CV-1192, 2020 WL 6363898, at *3 (E.D.N.Y. Oct. 28, 2020) ("Claims against the [Southampton Town Police Department] are therefore dismissed because the department cannot sue or be sued."); *Burris,* 2017 WL 9485714, at *4 ("Inasmuch as defendants Hempstead Village Police Department, the New York City Police, and Nassau County Police do not have a legal identity separate and apart from a municipality and thus cannot sue or be sued, plaintiff cannot maintain an action against them."); *Simpson v. Town of Warwick Police Dep't*, 159 F. Supp. 3d 419, 433 (S.D.N.Y. 2016) ("Simpson cannot sustain *Monell* claims against that entity because, as an "administrative arm" of Warwick, it "do[es] not have a legal identity separate and apart from the municipality and cannot sue or be sued" in its own name.); *Harris v. Nassau Cty.,* No. 13-CV-4728, 2016 WL 3023265, at *12 (E.D.N.Y. May 24, 2016) ("Because the [Nassau County Police Department] is an administrative arm of the municipality of Nassau County, any claims against it must be dismissed."). Because the PWPD is an administrative arm of the Town of North Hempstead, the PWPD cannot be sued and any claims against it must be dismissed. For this reason, the Court need not address the PWPD's remaining arguments regarding the underlying constitutional violations alleged in Plaintiff's Complaint or proposed in her PAC.

Moreover, even if the Court construed Plaintiff's claim against the PWPD as if it had been brought against the Town of North Hempstead itself, for the reasons discussed above, the

*Monell* claim could not stand.  *See LaPietra*, 2020 WL 5891888, at *7 ("However, in deference to Plaintiffs' *pro se* status, the Court will construe Plaintiffs' claims as if they had been brought against the City of Albany, the real party in interest.") (citing *Solis v. Cty. of Westchester*, No. 94-CV-5102, 1995 WL 14072, at *1 (S.D.N.Y. Jan. 10, 1995) (noting that the Westchester County Department of Corrections is not a legal entity and that the County of Westchester is the real party in interest)); *Simpson v. Town of Warwick Police Dep't*, 159 F. Supp. 3d 419, 433 (S.D.N.Y. 2016) (construing plaintiff's claim against the Warwick Police Department as *Monell* claims against Warwick itself in light of plaintiff's *pro se* status); *Daly v. Ragona*, No. 11-CV-3836, 2013 WL 3428185, at *10 (E.D.N.Y. July 9, 2013) (construing *pro se* plaintiff's claim against Nassau County Police Department as *Monell* claim against Nassau County).

Accordingly, the PWPD's motion to dismiss the Complaint is GRANTED.  Because the PWPD is an "administrative arm" of the municipality and, as such, cannot be sued, Plaintiff's claims against the PWPD are dismissed with prejudice.  Any amended pleading may include the Town of North Hempstead as a defendant if Plaintiff is able to assert a good-faith basis for alleging that her rights were violated because of a municipal policy or custom attributable to the Town.

### C.     Leave to Amend

"When addressing a *pro se* complaint, a district court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Aquino v. Prudential Life & Cas. Ins. Co.*, 419 F. Supp. 2d 259, 278 (E.D.N.Y. 2005) (citing *Thompson v. Carter*, 284 F.3d 411, 419 (2d Cir. 2002) ("The liberal pleading standards applicable to *pro se* civil rights complaints in this circuit require that the district court give [plaintiff] an opportunity to flesh out his somewhat skeletal complaints before

dismissing them")).  The Second Circuit has stated that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint."  *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999) (citing *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990)), *overruled on other grounds by Gonzaga v. Doe*, 536 U.S. 273 (2002); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").  The Court should generally not dismiss a *pro se* complaint without granting the plaintiff leave to amend if a valid claim could be stated.  *Clifton v. Hra Nyc Govt*, No. 16-CV-1753, 2016 WL 4203486, at *1 (E.D.N.Y. Aug. 9, 2016) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

Even under this liberal standard, however, the court may decline to provide the plaintiff with an opportunity to re-plead if the court finds that the plaintiff "cannot correct the defects in his federal claims" and therefore "any attempt to amend the pleading . . . would be futile."  *Shorter v. Rice*, No. 12-CV-0111, 2012 WL 1340088, at *5 (E.D.N.Y. Apr. 10, 2012); *see Cuoco*, 222 F.3d at 112 (citing *Hunt v. Alliance N. Am. Gov't Income Trust*, 159 F.3d 723, 728 (2d Cir. 1998)) ("The problem with [the plaintiff's] causes of action is substantive; better pleading will not cure it.  Repleading would thus be futile.  Such a futile request to replead should be denied.").  Moreover, while amendments to *pro se* complaints should be granted "fairly freely," even *pro se* litigants are not entitled to unlimited opportunities to amend their pleadings.  *Hagans v. Nassau Cnty, Police Dep't*, No. 18-CV-1918, 2020 WL 1289529, at *9 (E.D.N.Y. Mar. 18, 2020) (quoting *Holmes v. Goldin*, 615 F.2d 83, 85 (2d Cir. 1980)); *Best v. City of N.Y.*, No. 12-CV-7874, 2014 WL 163899, at *3 (S.D.N.Y. Jan. 15, 2014).

For the reasons discussed above, any attempt to amend the Complaint to replead the claims asserted against the County and the PWPD would be futile under the circumstances presented.  Consequently, Plaintiff is DENIED leave to amend the Complaint to replead any

claims asserted against the County or the PWPD.  However, in light of Plaintiff's *pro se* status, Plaintiff is GRANTED leave to amend her Complaint but must do so no later than January 8, 2021.  Plaintiff is advised that if she file an amended complaint, that pleading will completely replace the original complaint, must be captioned "Amended Complaint," and must bear the same docket number as this Order.  If Plaintiff elects to file an amended complaint, she must allege only those facts relevant to support the elements of her claims and specifically identify the defendants who allegedly personally violated her constitutional rights while acting under color of state law.  In its current form, the PAC does not adequately identify the defendants against whom Plaintiff may seek to file an amended complaint.  As such, Plaintiff must identify the defendants (1) in the caption of the amended complaint, (2) where the form complaint requests that the defendants be listed, and (3) in the body of any proposed amended complaint.  If Plaintiff fails to file an amended complaint by January 8, 2021, the Court will direct the Clerk of Court to enter judgment dismissing the case.

## V.    CONCLUSION

For the foregoing reasons, the Plaintiff's motion for leave to amend the Complaint is GRANTED, in part, and DENIED, in part; the County Defendant's motion to dismiss is GRANTED; and the PWPD's motions to dismiss is GRANTED.  Plaintiff is permitted to file an amended by January 8, 2021 if she chooses to do so.


**SO ORDERED.**

Dated: Central Islip, New York
        November 30, 2020


/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
United States Magistrate Judge

21