**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

DEIRDRE PRICE,

                          Plaintiff,           **MEMORANDUM & ORDER**

       v.                               18-CV-4393 (ST)

ADA DIANA PERESS, et. al.,

                          Defendants.
-----------------------------------------------------------X
**TISCIONE, United States Magistrate Judge:**


## INTRODUCTION

      This action arises from the events associated with two separate arrests and prosecutions of the *pro se* Plaintiff which occurred as a result of incidents between Plaintiff and her daughter on or around July 24, 2017 and on December 9, 2020.  Plaintiff claims her constitutional rights were violated by the police officers involved in the arrests and the prosecutor, Diana Peress.  She brings claims under 42 U.S.C. § 1983 seeking damages for these violations.  Defendants have moved to dismiss via two separate motions, one from the police officer defendants and one from Ms. Peress.  For the reasons discussed herein, Defendant Peress's motion is GRANTED, and the police officer defendants' motion is GRANTED in part and DENIED in part.


## BACKGROUND

### I.    Procedural History

      This case was originally filed in State Court and was removed by Defendants on August 2, 2018. ECF No. 1.  That original complaint named three defendants, the County of Nassau, the Port Washington Police Department, and 10 John Does. Pl. Orig. Compl., ECF No. 1-1.  The

parties subsequently consented to proceed before Magistrate Judge A. Kathleen Tomlinson. ECF No. 51.

The County of Nassau and Port Washington Police Department proceeded to file motions to dismiss. *See* ECF Nos. 68, 75.  Judge Tomlinson granted both motions to dismiss.  In her Memorandum and Order, she held that Plaintiff's claims against Nassau County failed because "the County does not employ the individuals involved in the conduct which purportedly deprived Plaintiff of her constitutional rights..." *Price v. County of Nassau,* No. 18-CV-4393, 2020 WL 7123333, *8 (E.D.N.Y. Nov. 30, 2020).  The claims against the Port Washington Police Department failed even after construing them as claims against the Town of North Hempstead, which the PWPD was the administrative arm of, because Plaintiff failed to plausibly allege that her rights were violated because of a municipal policy or custom attributable to the Town as required under *Monell v. Department of Social Services*. *Id.* at *8-9; 436 U.S. 658 (1978).  Judge Tomlinson, however, granted Plaintiff leave to amend if she could plausibly allege claims against the defendants who purportedly personally violated her constitutional rights. *Price,* 2020 WL 7123333, *10.

Plaintiff subsequently filed an amended complaint, the operative complaint in this action, on March 18, 2021. Pl. Am. Compl., ECF No. 109.  In that complaint she named as Defendants Assistant District Attorney Diana Peress, Officer Robert Cavalli, Sergeant Daniel Devito, Detective Thomas McCarthy, Officer Dwayne McCurty, Sergeant Alexander Mott, Retired Police Chief James Salerno, and Officer Brandon Wilson. *Id.*

Counsel for the Port Washington Police Department (PWPD) Defendants (which is inclusive of all named defendants other than ADA Peress) filed a motion to dismiss for failure to state a claim on October 5, 2021. ECF No. 134.  Counsel for ADA Peress filed a motion to

dismiss the claims against her on October 8, 2021. ECF No. 144.  Plaintiff's opposition to the PWPD Defendants' motion to dismiss was filed on October 5, 2021 (*see* ECF No. 139) and her opposition to Defendant Peress's motion to dismiss was filed on October 8, 2021 (*see* ECF No. 145).

## II.    Facts

The following facts are taken from Plaintiff's amended complaint and are presumed true for the purposes of considering the motions to dismiss.

Deirdre Price, the Plaintiff in this case, was 56 years old and was residing in Port Washington, NY when her amended complaint was filed. Pl. Am. Compl. ¶ 6.  She is the mother of Domonique Price and grandmother to Domonique's two minor children. *Id.* at ¶ 8.

There is a history detailed in the complaint of Domonique physically abusing her mother. On July 23, 2014, when Domonique was 16, she was arrested for the first time for assaulting Plaintiff. *Id.* at ¶ 11.  On July 1, 2016, Plaintiff moved with Domonique and her new grandson to Port Washington, N.Y. *Id.* at ¶ 13.  On August 10, 2016 Domonique again physically assaulted Plaintiff, who reported the incident to the Port Washington police. *Id.* at ¶ 14-15.  Domonique was arrested that day.

On August 12, 2016, Plaintiff obtained an order of protection against Domonique, which Plaintiff has attached as Exhibit A of her complaint. *Id.* at ¶ 16, Exh. A.  That Order required Domonique to stay away from Plaintiff and not go within 100 yards of her. *Id.*, Exh. A.  This was later changed to an order to "Refrain From" Order of Protection on February 1, 2017, which expired on January 31, 2018. *Id.*, ¶ 16.  Plaintiff also obtained a Family Court Order of Protection which expired on February 10, 2017 and required Domonique to attend anger management classes. *Id.*

3

On July 6, 2017 and July 16, 2017, Domonique again physically assaulted Plaintiff. *Id.* at ¶ 18.  On July 24, 2017, Plaintiff went to the Port Washington Police Department in substantial pain to report "another domestic violence incident" and a violation of the Orders of Protection against Domonique. *Id.*

During this encounter, Plaintiff alleges that the PWPD detained her for hours while she waited to make her report. *Id.*  She says Defendant McCarthy made a racially discriminatory remark regarding African Americans disciplining their children with "sticks on the tree." *Id.* at ¶ 19.  Defendant McCarthy additionally allegedly told Plaintiff that either her or Domonique "is going to be arrested." *Id.* at ¶ 20.  Defendants McCarthy, DeVito, and Salerno then proceeded to arrest Plaintiff rather than Domonique. *Id.* at ¶ 21.  She alleges that this was selective enforcement by the PWPD and seems to imply this was due to the fact the Domonique is "very fair-skinned due to her multi-racial background…." *Id.* at ¶ 20.  Plaintiff claims she was never read her *Miranda* rights. *Id.*  She says she was placed "inside an inhumane cell," where she began to go into shock and her blood pressure escalated. *Id.* at ¶ 23.  An ambulance was then called, and she was transported to the hospital. *Id.* at ¶ 24.

During her hospitalization, from July 24, 2017 to July 28, 2017, she was handcuffed to the bed. *Id.* at ¶¶ 24-25.  The doctors took x-rays and Plaintiff alleges the police reports reflect that medical staff advised the police that Plaintiff was assaulted. *Id.* at ¶ 26.  Defendants Cavalli and Wilson acknowledged that they saw bruises on Plaintiff's body. *Id.*  Plaintiff also alleges she overheard Defendant Cavalli saying at the hospital that Plaintiff should not be arrested, that officers at the PWPD knew she had committed no crime, but that those officers wanted to arrest her anyway. *Id.* at ¶ 27.  While Plaintiff was recovering at the hospital, she was accused by Defendant Wilson of abusing Domonique with a belt but Plaintiff says that in a later report

4

Defendant Wilson said there was no belt. *Id.* at ¶ 28. She says this amounts to Defendant Wilson falsifying evidence and falsely charging her with a crime that he knew she did not commit. *Id.* She also claims Defendants Cavalli and Wilson falsely charged her with Assault in the Second Degree with a Deadly Weapon and Child Endangerment as a result of the July 24, 2017 incident but did not charge Domonique. *Id.* at ¶¶ 29-30.

She further claims that Defendants McCurty and Mott made the false allegations in the police report which said Plaintiff violated an order of protection held by Domonique (which Plaintiff says did not exist) and that Defendant McCurty failed to include in the police report the Order of Protection that Plaintiff in fact held or Domonique's prior arrests for domestic violence. *Id.* at ¶¶ 31-32. She alleges that these Defendants, in addition to Defendant Cavalli, committed "[Brady] Violations" because they omitted this information and that these false reports defamed her. *Id.* at ¶ 44. She also alleges that, when she returned to her residence on July 28, 2017, her belongings had been removed from her home by her daughter with the help of PWPD without a warrant. *Id.* at ¶¶ 34-35.

The Nassau County District Attorney's Office proceeded to prosecute Plaintiff for the July 24, 2017 incident. On December 6, 2017, Plaintiff alleges her attorney provided the Nassau County DA's Office with a notarized letter from Domonique requesting that the charges be dropped and "admit[ing] that her mother did not commit the crimes she accused her of, which resulted in the July 24, 2017 arrest of [Plaintiff]." *Id.* at ¶ 42. Plaintiff believed that at that point the charges against her should have been completely dismissed but that the Nassau County DA's Office (specifically ADA Diana Peress) continued its investigation. *Id.* at ¶ 43. She also claims ADA Peress "committed Brady Violations" because she knew Plaintiff had active Orders of

Protection against Domonique and that Domonique did not finish her twelve-week Anger Management classes as required by one of the Orders. *Id.*

Plaintiff alleges there were additional reasons to cast doubt on the allegations made against her. She says the photos of Domonique's injuries were not consistent with her accusations. *Id.* at ¶ 45. She alleges the PWPD Defendants must have known the accusations were not true because they saw the bruises on her leg while she was being treated in the hospital. *Id.* She says the PWPD Defendants knew she had valid Orders of Protection against Domonique. *Id.* And she points to the fact that she had no arrest record prior to this incident. *Id.* Eventually, Plaintiff says, the charges against her were "dropped." *Id.* at ¶ 46.

Additionally, on September 29, 2017, while the investigation of the July 24, 2017 incident was underway, Plaintiff called the police after her daughter assaulted her. *Id.* at ¶ 36. Defendants McCurty and DeVito arrived and arrested Domonique for that incident. *Id.* at ¶ 37. Plaintiff again received one-year Orders of Protection after the September 29, 2017 incident. *Id.* at ¶ 39. Plaintiff filed the initial complaint in this action on July 18, 2018. Pl. Compl., ECF No. 1-1.

On September 1, 2020 Plaintiff was again physically assaulted by Domonique, this time while she was sleeping. *Id.* at ¶ 47. She alleges Domonique spat in her face and she suffered a contusion on her sternum due to the assault. *Id.* at ¶ 48. Plaintiff called her sister during the incident who remained on the phone and heard the assault. *Id.* Two unknown Port Washington police officers responded, but they initially did not arrest either Plaintiff or Domonique. *Id.* at ¶ 49. Plaintiff alleges that sometime after that, while she was not in the residence, four unknown Port Washington police officers went to the home and attempted to convince Domonique to file a police report against Plaintiff as retaliation for her lawsuit against the PWPD. *Id.* at ¶ 50.

6

On December 9, 2020, Plaintiff called the Port Washington Police Department to report again being assaulted in her home by her daughter. *Id.* at ¶ 53.  She claims Defendant McCurty and Officer Burris (who is not named as a Defendant in the complaint) "falsified a police report" claiming, without evidence, that Plaintiff assaulted her daughter. *Id.* at ¶ 54.  She says the officers ignored "clear signs" she was the victim, including that she had "obvious bruising" on her face, eyes, arms, and legs. *Id.* at ¶ 54.  She attached photos dated December 14 and December 15, 2020 to the amended complaint that she alleges show her injuries on those dates. Pl. Am. Compl., Exh. C.

Defendant McCurty and Officer Burris arrested Plaintiff and took her to the Port Washington Police Department. *Id.* at ¶ 55.  After arrival, Plaintiff began feeling ill, experiencing a shortness of breath and chest pain. *Id.* at ¶ 56.  She was transported to Nassau University Medical Center and was hospitalized there from December 9, 2020 to December 13, 2020. *Id.* at ¶ 57.  Medical staff again advised the officers, this time Defendant McCurty and Officer Burris, that Plaintiff had bruises on her body and had been assaulted, but they refused to file a police report and arrest Domonique for the assault. *Id.* at ¶ 58.  Plaintiff alleges that when she returned home, she again found items were missing. *Id.* at ¶ 59.

Plaintiff is employed as a full-time Teacher Assistant and has been since 2003.  She has been on medical leave since January 31, 2017. *Id.* at ¶ 9.  She says that, on December 27, 2020, she received a letter from the State Education Department that indicated her future employment might be impacted by the criminal charges against her. *Id.* at ¶ 61.

Plaintiff alleges these actions violated her constitutional rights and brings claims against all Defendants under 42 U.S.C. § 1983. *Id.* at ¶¶ 62-74.

The PWPD Defendants have submitted, along with their brief, police reports and court records from both the July 2018 and December 2020 incidents.  They urge the Court to consider these documents at the motion to dismiss stage.  The documents include sworn victim statements from Domonique, which Plaintiff alleges are false.  In her statement about the July 2017 incident, Domonique told police, "This morning while giving my son…a bath I noticed he had a nose bleed. I then went into my mothers [*sic*] room…to ask for help. In frustration and being scared for [my child] I yelled at my mom which in return she yelled back at me…She yelled and advised me to put Vaseline on his nose bleed, after doing so she came into my room and took my phone. I asked her why would she do that it was childish which is when she said 'I'll show you childish.' My mother then grabbed a belt and started hitting me while in the presence of my child…She also threatened to kill me." PWPD Def. Br., Exh. C, ECF No. 135-3.  In her statement about the 2020 incident, Domonique told police, "[W]hen I walked in [to the living room] I saw that my son Angelo was eating paper off the table. I asked my mother why…and my mother began screaming at me that she couldn't handle my kids. [W]hen I asked her to stop yelling my mother stood up and grabbed me by the hair pulling me to the ground causing pain in my neck. [S]he then began to punch me in the face several times…" PWPD Def. Br., Exh. G, ECF No. 135-7.

In her opposition to Defendants' motions, Plaintiff attaches documents that were not attached to the complaint.

## LEGAL STANDARD

When assessing a Rule 12(b)(6) motion to dismiss, a court must determine whether the complaint states a legally cognizable claim by making factual allegations that, if proven, would show that the Plaintiff is entitled to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). *Twombly* and *Iqbal* command that all elements of the Plaintiff's claim must be plausibly alleged in the complaint, such that the complaint contains more than "naked assertions," or allegations that amount to "sheer possibility," containing instead "factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.*

In assessing a motion to dismiss under Rule 12(b)(6), the Court "must accept all factual allegations as true and draw all reasonable inferences in favor of the non-moving party." *Giambrone v. Meritplan Ins. Co.*, 13-CV-7377 (MKB) (ST), 2017 WL 2303980, at \*3 (E.D.N.Y. Feb. 28, 2017) (internal quotation marks, citation omitted) (*adopted by Giambrone v. Meritplan Ins. Co.,* 13-CV-7377, 2017 WL 2303507 (E.D.N.Y. May 24, 2017)). On a motion to dismiss, a Court is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir. 1985).

*Pro se* filings, such as Plaintiff's amended complaint here, are to be liberally construed and should interpreted "to raise the strongest arguments" that they suggest. *Soto v. Walker,* 44 F. 3d 169, 173 (2d Cir. 1995). *Pro se* pleadings are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520 (1972). Courts can consider additional factual allegations made by a *pro se* plaintiff in opposition papers and other additional materials attached to those papers. *Bakersville v. Blot,* 224 F. Supp. 2d 723, 728 (S.D.N.Y. 2002)

(citing *Gill v. Mooney*, 824 F. 2d 192, 195 (2d Cir. 1987)).  *Pro se* status, however, "does not exempt a party from compliance with relevant rules of procedural and substantive law" such as the plausibility standard. *Iwachiw v. N.Y. City Bd. Of Educ.,* 194 F. Supp. 2d 194, 202 (E.D.N.Y. 2002).

On considering a motion to dismiss the Court generally limits itself to the facts alleged in the complaint and documents attached to it, however it may also consider matters of which judicial notice may be taken and documents whose terms and effect are relied heavily upon in the operative pleading and are thus "integral" to it. *Price v. County of Nassau,* No. 18-CV-4393, 2020 WL 7123333, *6 (E.D.N.Y. Nov. 30, 2020) (citing *Chambers v. Time Warner Inc.,* 282 F.3d 147, 152-53 (2d Cir. 2002)).  "In deciding a motion to dismiss a *pro se* complaint, it is appropriate to consider 'materials outside the complaint to the extent they are consistent with the allegations in the complaint.'" *Alsaifullah v. Furco,* No. 12-CV-2907, 2013 WL 3972514, *4 n.3 (S.D.N.Y. Aug. 2, 2013).  To consider any other documents, the motion must be treated as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d).

## DISCUSSION

### I.      All Claims Against Defendant Peress Are Dismissed

I first consider Defendant Peress's motion to dismiss.  Plaintiff alleges that Defendant Peress "committed Brady Violations because correspondences demonstrate[] that she knew Plaintiff had a valid Order of Protection[] and her daughter had violated her ACOD because she did not finish her twelve-week Anger Management classes," and that she "continued to prosecute Plaintiff after she received the sworn statement by Plaintiff's daughter."  Pl. Am. Compl. ¶ 43.  It appears from the complaint that all conduct Plaintiff alleges Defendant Peress engaged in was related to the prosecution of the July 2017 incident.

10

Defendant Peress argues that she is protected from all of Plaintiff's claims under the doctrine of "absolute immunity," that even if she is not she would be protected by qualified immunity, that she is also shielded by the Eleventh Amendment, and that Plaintiff's amended complaint does not relate back to her original complaint. *See* Peress Def. Br., ECF No. 144-1.  In her response, Plaintiff argues that Defendant Peress violated her constitutional rights by prosecuting her and not prosecuting her daughter for violating the Orders of Protection and that immunity does not extend to *Brady* violations by a prosecutor. *See* Pl. Peress Opp. Aff. ¶¶ 1-7, ECF No. 145.

To the extent Plaintiff brings these claims against ADA Peress in her official capacity, such claims would be barred by the Eleventh Amendment of the United States Constitution.  An ADA is a state official, and Plaintiff brings this claim seeking damages.  "To the extent a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." *Ying Jing Gan v. City of New York,* 996 F. 2d 522, 529 (2d Cir. 1993) (citing *Kentucky v. Graham,* 473 U.S. 159 (1985)).  Thus, Plaintiff's claims against ADA Peress in her official capacity must be dismissed.

§ 1983 claims for damages against state actors in their individual capacities are not barred by the Eleventh Amendment.  However, state actors receive immunity for certain actions taken in their role as state actors.  The immunity of state actors for § 1983 claims is based on the "nature of the function performed, not the identity of the actor who performed it." *Forrester v. White,* 484 U.S. 219, 229 (1988).  Some offices perform "special functions" which "because of their similarity to functions that would have been immune when Congress enacted § 1983" are entitled to absolute immunity from damages liability. *Buckley v. Fitsimmons,* 509 U.S. 259, 268-

69 (1993).  Even where there is a common-law tradition of absolute immunity for a function, however, courts must still consider "whether § 1983's history or purposes nonetheless counsel against recognizing the same immunity in § 1983 actions." *Tower v. Glover,* 467 U.S. 914, 920 (1984).

The Supreme Court has held that a state prosecutor has absolute immunity for the initiation and pursuit of a criminal prosecution, which are functions "intimately associated with the judicial phase of the criminal process" and are part of the prosecutor's advocacy role. *Imbler v. Pachtman,* 424 U.S. 409, 430 (1976).  However, those functions are contrasted with the prosecutor's administrative functions which do not receive absolute immunity. *Id.*  In other words, the fact that injuries alleged in a § 1983 action are suffered during criminal proceedings is not dispositive to an inquiry of whether absolute immunity applies, instead the focus must be on the nature of the conduct for which immunity is claimed. *Buckley,* 509 U.S. at 272.

Some investigatory functions a prosecutor performs are entitled to absolute immunity because they are functions performed as part of the advocacy role of the prosecutor whereas others do not get the same immunity.  The line between these two is not precise, however, the Supreme Court has held:

> "A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity…[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State are entitled to the protections of absolute immunity. Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made…There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand. When a prosecutor performs the investigative functions normally

12

performed by a detective or police officer [those are not protected by absolute immunity]." *Buckley,* 509 U.S. at 273.

In *Buckley,* the Supreme Court held that some actions by prosecutors were "entirely investigative in character" and not entitled to absolute immunity because the prosecutors did not contend "that they had probable cause to arrest petitioner or to initiate judicial proceedings during that period. Their mission at that time was entirely investigative in character." *Id.* at 274.

All conduct alleged by ADA Peress in the complaint occurred after Plaintiff was arrested and arraigned on the charges in the July 2017 incident.  Plaintiff claims she was arrested on July 24, 2017 and her opposition papers show she was arraigned the next day. Pl. Am. Compl. ¶ 20; Pl. Peress Opp. Aff., Exh. B.  Even accepting as true all of Plaintiff's assertions in the complaint, the function ADA Peress was performing by investigating what occurred and proceeding with the prosecution of Plaintiff was all preparation for a potential trial on the charges against Plaintiff and thus part of her advocacy role.

It is clear from the complaint that Defendant Peress was not performing the normal role of police or detective and attempting to find clues, but instead was performing her advocacy function of prosecuting Plaintiff after charges had already been filed.  Though Plaintiff disagrees with how she performed that role and alleges that her rights were violated by ADA Peress in performing those functions, even if that were true, ADA Peress would be protected from civil liability in her individual capacity by absolute immunity.  Even if ADA Peress had violated Plaintiff's rights for refusing to stop prosecuting the incident after Domonique sent a letter asking the charges be dropped[1], she would be shielded from civil liability for that decision in her individual capacity by absolute immunity.  And, contrary to Plaintiff's contentions, absolute

---

[1] It should be noted Plaintiff herself alleges that "soon after" the Prosecutor's Office received the letter, the "charges against Ms. Price were dropped." Pl. Am. Compl. ¶ 46.

immunity does extend to alleged *Brady* violations by ADAs. *See Hill v. City of New York,* 45 F.3d 653, 664 (2d Cir. 1995).  Thus, these claims must be dismissed.

Moreover, Plaintiff has not sufficiently alleged any Defendant committed a *Brady* violation in this case.  *Brady* violations contain three elements: The evidence must be favorable to the accused, the evidence must have been suppressed by the state, and prejudice must have ensued. *United States v. Rivas,* 377 F. 3d 195, 199 (2d Cir. 2004).  Prejudice occurs where the evidentiary suppression undermines confidence in the outcome of the trial (or plea). *Leka v. Portuondo,* 257 F. 3d 89, 104 (2d Cir. 2001).

Here, there was no suppression of evidence.  Plaintiff argues ADA Peress committed *Brady* violations because "she knew Plaintiff had a valid Order of Protection[] and her daughter had violated her ACOD because she did not finish her twelve-week Anger Management classes." Pl. Am. Compl. ¶ 43.  But it was Plaintiff herself who petitioned courts and was granted the Orders of Protection. *See* Pl. Am. Compl., Exh. A.  They were not suppressed, Plaintiff had access to them as they were issued to her.  And Plaintiff makes no claim that she did not know about Domonique failing to attend anger management classes.

Finally, that brings us to Plaintiff's last allegation, that her rights were violated by ADA Peress's refusal to prosecute Domonique for her violation of the Orders of Protection in place at the time of the July 2017 incident.  "There is no constitutional right to have someone arrested, absent a special relationship between him and the state, and there is no constitutional right to an investigation by government officials." *Romero v. City of New York,* 839 F. Supp. 2d 588, 615, fn. 18 (E.D.N.Y. 2012) (quoting *Corbin v. Stevins,* No. 19-CV-1054, 1992 U.S. Dist. LEXIS 5950, 1992 WL 96684, *8 (S.D.N.Y. Apr. 28, 1992)); *Longi v. County of Suffolk,* No. 02-CV-5821, 2008 U.S. Dist. LEXIS 25468, 2008 WL 858997, *22 (E.D.N.Y. Mar. 27 2008)).  Nor can

14

the Court conceive of any federal statutory right to have Domonique investigated or prosected. Thus, this claim too must be dismissed.

Even after accepting all claims in Plaintiff's complaint as true, construing the complaint liberally, and incorporating Plaintiff's allegations contained in her opposition papers, all claims against ADA Peress must be dismissed.

## II.       Some, But Not All, Claims Against the PWPD Defendants Are Dismissed

The remaining Defendants in the action are all former or current Port Washington Police Department employees who bring their motion to dismiss together.  Plaintiff purports to sue them in both their official and individual capacities. Pl. Am. Compl. ¶ 7.

"…[A] suit against a municipal officer in her official capacity is deemed a suit against the municipality itself." *Legal Aid Soc'y v. City of New York,* 114 F. Supp. 2d 204, 231 (S.D.N.Y. 2000) (citing *Kentucky v. Graham,* 473 U.S. 159, 166-67 (1985)).  As this Court previously found, that entity would be the Town of North Hempstead. *Price,* 2020 WL 7123333, *8.  A municipal defendant, however, "cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978).  Instead, to prevail on a *Monell* claim against a municipality, a plaintiff must show "the deprivation the plaintiff's rights under federal law [was] caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven,* 691 F. 3d 72, 80 (2d Cir. 2012).

In her first complaint, in an attempt to establish a sufficient *Monell* claim, Plaintiff alleged the municipal defendant failed to train or supervise its employees and that one defendant should have been trained to notice and correct errors in the police report.  Judge Tomlinson ruled that these allegations were conclusory, that the complaint did not plausibly allege a *Monell* claim against any government entity, and dismissed those claims. *Price,* 2020 WL 7123333, *7.

In her amended complaint, Plaintiff again fails to allege any facts to support a *Monell* claim against the Town of North Hempstead.  The closest she gets is an allegation that the Chief of Police James Salerno knew the domestic violence history she had suffered at the hands of her daughter when she was arrested. Pl. Am. Compl. ¶ 21.  One of the means of alleging a claim of custom or policy under *Monell* is to allege actions or decisions taken by a municipal officer with final policymaking authority that caused a plaintiff's injury. *McLeod v. Llano,* No. 17-CV-6062, 2019 U.S. Dist. LEXIS 39925, *16 (E.D.N.Y. Mar. 12, 2019) (quoting in part *Jones v. Westchester County,* 182 F. Supp. 3d 134, 158 (S.D.N.Y. 2016)).  However, this sole allegation in Plaintiff's complaint does not establish actions taken or decisions made by the Chief of Police, merely that the Chief of Police knew of a history of abuse.  Thus, Plaintiff's claims against the PWPD defendants in their official capacities are dismissed, and I move to the claims against them in their individual capacities.

### a.      The PWPD Defendants Are Not Entitled to Qualified Immunity at This Time

At the outset, the PWPD Defendants argue they are immune from suit for false arrest under a theory of qualified immunity.

Qualified immunity protects government officials from "civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).

The Second Circuit has recognized however that, "[A]s a general rule 'the defense of qualified immunity cannot support the grant of a [Rule] 12(b)(6) motion.'" *Chamberlain v. City of White Plains,* 960 F.3d 100, 110 (2d Cir. 2020) (quoting *Green v. Maraio,* 722 F.2d 1013, 1018 (2d Cir. 1983)).  The reason for this is the "more stringent standard applicable to this procedural route.  Not only must the facts supporting the defense appear on the face of the

complaint, but, as with all Rule 12(b)(6) motions, the motion may be granted only where it

appears [that the alleged facts, if true, plausibly state a claim] that would entitle [a defendant] to

relief. Thus, the plaintiff is entitled to all reasonable inferences from the facts alleged, not only

those that support his claim, but also those that defeat the immunity defense." *Chamberlain,* 960

F.3d at 110-11 (quoting *McKenna v. Wright,* 386 F.3d 432, 436 (2d Cir. 2004)).  Though

qualified immunity should be resolved "at the earliest possible stage in litigation," to not enforce

a "formidable hurdle" for such a defense at the Rule 12(b)(6) stage would result in a situation

where "plaintiffs alleging a violation of their constitutional rights would face a heightened

pleading standard under which they must plead not only facts sufficient to make out their claim

but also additional facts to defeat an assertion of qualified immunity." *Pearson v. Callahan,* 555

U.S. 223, 232 (2009); *Chamberlain,* 960 F. 3d at 111 (quoting in part *Field Day, LLC v. County

of Suffolk,* 463 F. 3d 167, 191-92 (2d Cir. 2006)).

However, that does not mean qualified immunity can never be resolved at the motion to

dismiss stage.  A Defendant is entitled to qualified immunity at that stage where "the allegations

of the complaint fail to state a claim that [a government official's] conduct violated 'clearly

established statutory or constitutional rights of which a reasonable person would have known.'"

*Charles W. v. Maul,* 214 F.3d 350, 357 (2d Cir. 2000) (quoting *Harlow,* 457 U.S. at 818).

Here, the complaint alleges that Plaintiff was arrested by the Port Washington Police after

a physical altercation with Domonique on July 24, 2017, after reporting an earlier physical

assault upon her by Domonique to the Port Washington Police on August 10, 2016  for which

Domonique was arrested, obtaining Orders of Protection against Domonique from two separate

courts that were in effect on July 24, 2017, appearing at the police station voluntarily to report a

violation of those orders on July 24, 2017, and having no criminal record.  She also alleges the

belt that police believed she used to assault Domonique was never found (Pl. Am. Compl. ¶ 28) and that her daughter had "no bruises at all on her body or face as police reports stated." *Id.* at ¶ 35.  She alleges that Police saw bruises on her body. *Id.* at ¶ 26.  She does appear to acknowledge that Police had a sworn statement from her daughter when they arrested her but alleges it was fabricated and Defendants should have known it was false. *Id.* at ¶ 45.

As to the December 9, 2020 arrest, Plaintiff alleges she and a witness had previously made a report to police that her daughter assaulted her on September 1, 2020, that she emailed a complaint to police about their handling of the September 1 incident, that she had obvious bruising on her face, eyes, arms, and legs from the December 2020 assault, and that she herself called the police to make an incident report. *Id.* at ¶¶ 51-54.  The question is then whether, accepting all this as true and drawing all inferences on both the facts and the qualified immunity defense in Plaintiff's favor, such an arrest would have violated the clearly established right to be free from unlawful arrest at the time of each incident.

The right to be free from arrest or prosecution in the absence of probable cause has been a clearly established constitutional right since at least 1991. *See Golino v. City of New Haven,* 950 F. 2d 864, 871 (2d Cir. 1991).  Defendants urge that the fact that they had a sworn victim statement establishes probable cause as a matter of law. PWPD Def. Br., 10, ECF No. 136.  Probable cause exists when the arresting officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Escalera v. Lunn,* 361 F.3d 737, 743 (2d Cir. 2004) (internal quotations omitted).  Contrary to Defendants' claim that a sworn victim statement establishes probable cause without qualification, the Second Circuit has held, "When information is received form a putative victim

or an eyewitness, probable cause exists…unless the circumstances raise doubt as to the person's veracity." *Curley v. Vill. Of Suffern,* 268 F.3d 65, 70 (2d Cir. 2001) (citing *Singer v. Fulton County Sheriff,* 63 F.3d 110, 119 (2d Cir. 1995)).

Assuming the facts as Plaintiff has pled them and drawing all inferences in her favor, the circumstances did raise doubt as to her daughter's veracity both times Plaintiff was arrested. Plaintiff had been abused before by her daughter, the PWPD were aware of that abuse having handled previous instances of it and having arrested Domonique for it previously, officers observed Plaintiff was bruised in both instances, and court orders had been imposed for Plaintiff's protection from physical abuse from her daughter which the PWPD officers were allegedly aware of. All of this would have called into question the veracity of Plaintiff's daughter's statement before Police arrested Plaintiff and would have negated probable cause, or at least required officers to conduct further investigation into the incident before deciding to arrest Plaintiff.

However, just because Plaintiff has sufficiently alleged facts showing a violation of her constitutional rights does not end our qualified immunity inquiry. Defendants would also receive qualified immunity at the motion to dismiss stage despite the alleged violation if, even construing everything in Plaintiff's favor, it was objectively reasonable for the officer to believe that probable cause existed or officers of reasonable competence could disagree on whether the probable cause test was met. *Robison v. Via,* 821 F. 2d 913, 921 (2d Cir. 1987).

Here, again construing all facts and inferences in Plaintiff's favor, it was not objectively reasonable to believe Domonique's statement provided probable cause to arrest. Given Domonique's known history of abuse of Plaintiff, Plaintiff's injuries, and the court orders, it would not be objectively reasonable to rely on a victim statement from Domonique alone for

probable cause for an arrest.  Though it is a closer question, construing the facts as Plaintiff has

alleged them and all inferences in her favor, officers of reasonable competence would not

disagree this alone was not enough for probable cause under these circumstances.

This does not mean that the PWPD Defendants cannot establish a qualified immunity

defense in this action.  It merely means that at this stage where the Court must construe all

Plaintiff's allegations as true and all inferences in her favor, to dismiss on the basis of qualified

immunity would be premature.  Discovery will reveal what evidence the police had and what

they knew when they made the arrest and will provide a broader record on which to assess the

claim under a different legal standard should it be raised again at the summary judgment stage.

### b.    Plaintiff Has Pled Plausible False Arrest Claims Against Defendants McCarthy, DeVito, Salerno, and McCurty

With the qualified immunity question disposed of, I move now to the general analysis on

a motion to dismiss of whether Plaintiff has pled facts which plausibly establish the elements of

her claims.

She first alleges that her Fourth Amendment rights were violated by the July 2017 and

December 2020 arrests by the Defendants.  To succeed on a § 1983 claim for false arrest, a

plaintiff must show the defendant intended to confine her, she was conscious of the confinement,

the plaintiff did not consent to the confinement, and that the confinement was not privileged or

supported by probable cause. *Ackerson v. City of White Plains,* 702 F. 3d 15, 19 (2d Cir. 2012).

The PWPD Defendants assert that Plaintiff has not plausibly alleged the last element because

they had probable cause to arrest her.

For the reasons already discussed above in considering the Defendants' qualified

immunity defense, Plaintiff has plausibly alleged false arrest.  However, she has only alleged

Defendants McCarthy, Devito, Salerno, and McCurty arrested her. Pl. Am. Compl. ¶¶ 21, 55.

20

She also alleges Officer Burris arrested her in December of 2020 but has not named him in this action.  "Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §1983." *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991).  Therefore any false arrest claims as to Defendants Cavalli, Mott, and Wilson are dismissed.

### c.   Plaintiff's Malicious Prosecution Claims Against Defendants McCarthy, DeVito, Salerno, and McCurty Survive the Motion to Dismiss

Plaintiff also asserts malicious prosecution claims against the PWPD Defendants.

To prevail on a 42 USC § 1983 claim for malicious prosecution, Plaintiff must show: (1) the defendant initiated a prosecution against the plaintiff; (2) it was without probable cause to believe the proceeding can succeed; (3) the proceeding was begun with malice; (4) the matter terminated in Plaintiff's favor; and (5) a sufficient post-arraignment liberty restraint occurred that implicated Plaintiff's Fourth Amendment rights. *Azeez v. City of New York*, 790 Fed. Appx. 270, 273 (2d Cir. 2019).

The PWPD Defendants argue first that probable cause is present in this case.  As discussed above, Plaintiff has successfully alleged a lack of probable cause at this stage in the litigation.  The PWPD Defendants further argue Plaintiff failed to allege a favorable termination.

Plaintiff alleges that the charges in the July 24, 2017 incident were "dropped." Pl. Am. Compl. ¶ 46.  Defendants claim that Plaintiff received an Adjournment in Contemplation of Dismissal (ACD) with respect to the charges from her July 24, 2017 arrest and have included a record from the Nassau District Court showing a disposition of three counts from Plaintiff's July 24, 2017 arrest which are noted as "ACD (02/09/18) dismiss and seal on 02/08/19." PWPD Def. Br., 15; PWPD Def. Br., Exh. E, ECF No. 135-5.  Though generally a court may not consult evidence outside the pleadings, it may take judicial notice of matters of public record, including

21

the disposition of a state criminal court proceeding. *Othman v. City of New York*, No. 13-CV-4771, 2015 U.S. Dist. LEXIS 54903, *5 (E.D.N.Y. Apr. 2, 2015) (adopted by 2015 U.S. Dist. LEXIS 54488 (E.D.N.Y. Apr. 27, 2015)) (citing *Johnson v. Pugh*, No. 11-CV-385, 2013 U.S. Dist. LEXIS 85699, 2013 WL 3013661, *2 (E.D.N.Y. June 18, 2013)).

Previously, the Second Circuit routinely found an ACD is not a favorable termination of a case sufficient to support a malicious prosecution claim. *Green v. Mattingly,* 585 F.3d 97, 103-04 (2d Cir. 2009) (citing *Shain v. Ellison,* 273 F.3d 56, 68 (2d Cir. 2001); *Murphy v. Lynn,* 118 F.3d 938, 949 (2d Cir. 1997); *Singleton v. City of New York,* 632 F. 2d 185, 193 (2d Cir. 1980)). This was part of the long-standing precedent in the Second Circuit that dismissal of charges was not a favorable termination without an additional affirmative indication of innocence. *See Singleton v. New York,* 632 F. 2d 185, 193 (2d Cir. 1980) ("…[A]n adjournment in contemplation of dismissal…did not constitute a termination in favor of appellant…Proceedings are terminated in favor of the accused only when their final disposition is such as to indicate the accused is not guilty…An adjournment in contemplation of dismissal, like a consent decree…leaves open the question of the accused's guilt.") (internal quotations omitted).

However, the Supreme Court recently overruled the Second Circuit's longstanding precedent that favorable termination sufficient to support a § 1983 malicious prosecution claim requires an affirmative indication of innocence. *See Thompson v. Clark,* 142 S. Ct. 1332 (2022). Though the case did not involve an ACD and involved simply a dismissal without explanation, the Court's holding was broad: "We conclude as follows: To demonstrate a favorable termination of a criminal prosecution for the purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction…We therefore reverse the judgment of the U.S. Court of Appeals for the Second

Circuit…" *Thompson,* 142 S. Ct. at 1335.  "An adjournment in contemplation of dismissal disposition…is neither a conviction nor an acquittal." *Hollender v. Trump Village Cooperative, Inc.,* 58 N.Y.2d 420, 433 (1983).  Therefore, an ACD is indeed a favorable termination for the purposes of a malicious prosecution claim under *Thompson.*[2]

And, though Defendants once again contest the probable cause element, as stated above I have found Plaintiff has sufficiently alleged a lack of probable cause in this case.  Such allegations also suffice to allege malice at this stage. *See Kurtz v. Hansell,* No. 20-CV-3401, 2021 U.S. Dist. LEXIS 56037, 2021 WL 1143619, *48 (S.D.N.Y. Mar. 24, 2021) ("…[A]t the pleadings stage, 'lack of probable cause generally raises an inference of malice.'") (quoting *Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 121, 131 (2d Cir. 1997)) (also citing *Emanuel v. Griffin*, No. 13-CV-1806, 2013 U.S. Dist. LEXIS 142723, 2013 WL 5477505, *7 (S.D.N.Y. Oct. 2, 2013)).

Plaintiff also submits a Nassau District Court record showing that both counts she was charged with in connection with her December 9, 2020 arrest were dismissed. *See* Pl. Opp., Exh 5, ECF No. 139.  That too is enough to allege a favorable termination under recent Supreme Court precedent.

Reading the complaint broadly, it appears the Defendants that Plaintiff alleges "initiated a prosecution" against her in July 2017 were Defendants McCarthy, DeVito, and Salerno who arrested her allegedly without probable cause (Pl. Am. Compl. ¶ 21) and Defendant Wilson, who she claims "falsified evidence and falsely charged Plaintiff of a crime that he knew she did not commit" (*Id.* at ¶ 28).  The only Defendant named in initiating the December 2020 prosecution is Defendant McCurty.  *Id.* at ¶¶ 54-55.

---

[2] Recent rulings from this Circuit have confirmed that that is the new state of the law. *See e.g. Perez v. City of New York,* 20-CV-1359, 2022 U.S. Dist. LEXIS 166418, 2022 WL 4236338 (Sept. 14, 2022).

Therefore, Plaintiff's malicious prosecution claims against Defendants McCarthy, DeVito, and Salerno stemming from the July 2017 incident and McCurty relating to the December 2020 incident survive the motion to dismiss.  All other malicious prosecution claims are dismissed.

### d.    Plaintiff's Abuse of Process Claims Must Be Dismissed

An abuse of process claim under § 1983 is governed by state law. *Cook v. Sheldon,* 41 F. 3d 73, 80 (2d Cir. 1994).  In New York, the elements of an abuse of process claim are (1) the employment of regularly issued legal process to compel performance or forbearance of some act; (2) with the intent to do harm without excuse or justification; and (3) in order to obtain a collateral objective that is outside the legitimate ends of the legal process. *Burbar v. Inc. Vill. Of Garden City,* 961 F. Supp. 2d 462, 469-70 (E.D.N.Y. 2013) (citing *Savino v. City of New York,* 331 F. 3d 64, 76 (2d Cir. 2003)).  To meet the third element, a plaintiff must prove that the defendant acted with an improper purpose, that the defendant "aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Douglas v. City of New York,* 595 F. Supp. 2d 333, 344 (S.D.N.Y. 2009).

The PWPD Defendants make two arguments as to why Plaintiff's abuse of process claims fail.  The first is that probable cause constitutes an excuse or justification that defeats an abuse of process claim.  However, I have already found that at the pleading stage Plaintiff has overcome that hurdle.

Defendants' next argument is that Plaintiff does not plead that there was any collateral purpose behind either of Plaintiff's arrests or prosecutions.  Certainly with regard to the July 24, 2017 arrest and prosecution, Plaintiff does not allege any collateral purpose.  She maintains that she did not commit the offenses alleged and that police reports were "falsified" but nowhere does

24

she allege that the PWPD Defendants arrested her for any reason other than to see her criminally prosecuted for the alleged offenses. *See* Pl. Am. Compl. ¶ 44.

Plaintiff's allegations regarding the December 2020 arrest are a closer question.  Plaintiff alleges that on September 1, 2020 she was physically assaulted by her daughter and that her daughter called the police. *Id.* at ¶¶ 47-48.  She says that two unknown PWPD officers responded but did not arrest either her or her daughter. *Id.* at ¶ 49.  She then says four unknown officers returned to the house while she was away and tried to convince Dominique to file a police report against Plaintiff because she was suing the department. *Id.* at ¶ 50.  Later, on December 9, 2020 the altercation between Dominique and Plaintiff occurred which Plaintiff was arrested for. *Id.* at ¶¶ 53-55.

Construing the complaint to raise the best arguments it presents, as the Court must with a *pro se* complaint, it seems Plaintiff is alleging that the interaction between Dominique and the unknown PWPD officers after the September 1, 2020 incident is evidence that her subsequent arrest may have been retaliation for her filing of a lawsuit, which would be a collateral purpose beyond her prosecution.  However, she does not allege that Defendant McCurty or Officer Burris, who arrested her, were among the four officers who visited Domonique in September of 2020 nor that they themselves intended to retaliate against her for this lawsuit or cause her to drop this lawsuit.  "Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §1983." *Moffitt,* 950 F.2d at 885.

Thus any abuse of process claims, to the extent they are pled in the complaint, are dismissed.

     **e.**    **Some of Plaintiff's Unlawful Search and Seizure Claims Survive the Motion**

Plaintiff alleges that when she returned to her residence on July 28, 2017, her belongings had been removed by the Defendants and the search of her residence and seizure of her effects had occurred without a warrant. Pl. Am. Compl. ¶¶ 34-35.  She claims that "the Port Washington Police assisted Ms. Price's daughter in removing the belongings from her home." *Id.* at ¶ 35. She also alleges that when she returned home after her December 2020 arrest "she again found items were missing" though she provides no further detail. *Id.* at ¶ 59.

The Fourth Amendment, incorporated against the States through the Fourteenth Amendment, provides a right to be free from "unreasonable searches and seizures." U.S. Const., Amend. IV.  "Searches and seizures inside a home without a warrant are presumptively unreasonable." *Brigham City v. Stuart,* 547 U.S. 398 (2006).

Thus, Plaintiff must at minimum plausibly allege that Defendants searched her residence without a warrant and removed items without a warrant to have viable § 1983 claims for unlawful searches and seizures.  Her allegations as to any potential violation after her December 2020 arrest are threadbare (just that she "found items were missing"), do not allege any involvement by Defendants, and make no mention of a lack of a warrant.  Therefore any claims for unlawful search and seizure regarding that incident are dismissed.

Her allegations regarding returning home on July 28, 2017 do sustain plausible claims, however.  She alleges that Defendants had assisted in removing items from her residence and says it was a "warrantless search."  Defendants argue that this was a permissible search based upon the voluntary consent of an occupant who is reasonably believed to share authority over the premises with a co-occupant, as Defendants were permitted to enter the house by Domonique. PWPD Def. Br., 17-18.  But that piece of information does not appear on the face of Plaintiff's complaint or in her attachments to her complaint.  She says Defendants "assisted" Domonique in

removing Plaintiff's belongings from the home, but nowhere does she claim Domonique provided consent to search the home and, even if she did, there remains a question over whether it was reasonable to believe Domonique had the authority to consent to a search of the premises that likely can only be resolved through additional discovery.

Thus, Plaintiff's claims of unlawful search and seizure after her July 2017 arrest survive the motion to dismiss.

### f.    Plaintiff's *Brady* and *Miranda* Claims Against the PWPD Defendants Are Dismissed

To the extent Plaintiff attempts to bring § 1983 claims against the PWPD Defendants for interfering with her right to a fair trial through *Brady* violations or for not advising her of her *Miranda* rights, all such claims are dismissed.  The *Brady* claims are dismissed for the reasons discussed above; she has not sufficiently pled any evidence was suppressed.  And a violation of *Miranda* rules does not provide a basis for a claim under § 1983. *Vega v. Tekoh,* 142 S. Ct. 2095, 2101 (2022).  Thus, these claims are dismissed.

### g.    Plaintiff's Equal Protection Claims Survive Against Defendant McCarthy

Plaintiff alleges claims against Defendants for "Racial Profile," "Selective Enforcement," and "Unequal Protection."  It appears based on Plaintiff's complaint, that these allegations boil down to a claim that her Fourteenth Amendment rights were violated when she was treated differently than Domonique on the basis of her skin color by Defendant McCarthy when he arrested her for the July 2017 incident and that that treatment was the result of racial animus.

Plaintiff has plausibly alleged an Equal Protection claim. Plaintiff alleges that "Defendant McCarthy racially profiled [her] and [performed] selective enforcement." Pl. Am. Compl. ¶ 20. She says Defendant McCarthy arrested her and not Domonique who is "very fair-skinned due to

her multi-racial background…" *Id.* She also alleges that prior to her arrest "Defendant McCarthy made a racially discriminatory remark to [her] about how he felt that African Americans discipline their children with 'sticks on the tree.'" *Id.* at ¶ 19.

"To establish an equal protection violation based on a claim of selective enforcement, plaintiff must show '(1) that [he was] treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Anderson v. City of New York,* 817 F. Supp. 2d 77, 94 (E.D.N.Y. 2011) (quoting *Harlen Assocs. V. Inc. Vill. Of Mineola,* 273 F. 3d 494, 499 (2d Cir. 2001)).

Defendants argue this claim fails because PWPD arrested Domonique on other occasions and thus Plaintiff was not treated differently. And, to be sure, this claim would not survive if alleged against the PWPD. However, Plaintiff's allegations only support a claim against Defendant McCarthy for selective treatment. And there is no allegation that Defendant McCarthy arrested Domonique on those other occasions.

Plaintiff alleges Defendant McCarthy arrested her in July 2017 instead of Domonique who had assaulted her and violated court orders. Plaintiff alleges that that reason was because of their skin colors, an impermissible consideration to base an arrest upon. Plaintiff saves these allegations from being conclusory by alleging Defendant McCarthy made a racist comment about African American parents before arresting her, to support her view that she was arrested because of her skin color. This is sufficient at this stage, when presuming all Plaintiff's allegations as true, to make out the claim. Should Defendants be able to later prove it was indeed a permissible consideration and not racial animus which motivated the July 2017 arrest of Plaintiff, then they may be entitled to summary judgment on this claim at that point.

28

### h.      Plaintiff's Due Process Claims Are Dismissed

Plaintiff also alleges a "shock in conscience" claim.  The Court construes that (as there are no surviving allegations as to procedural due process violations) as alleging a substantive due process violation which results from government action "so egregious, so outrageous, that it may be fairly said to shock the contemporary conscience." *Pena v. DePrisco,* 432 F. 3d 98, 112 (2d Cir. 2005) (quoting *County of Sacramento v. Lewis,* 523 U.S. 833, 847 n.8 (1998)).

It is unclear which conduct in the complaint Plaintiff alleges to have been a substantive due process violation.  While deliberate indifference to medical needs of prisoners may suffice (*see Estelle v. Gamble,* 429 U.S. 97, 104 (1976)), in this case Plaintiff's complaint alleges that she was promptly rushed to the hospital when she suffered medical distress while in custody. *See* Pl. Am. Compl. ¶¶ 23-24; 56-57.

Reviewing the complaint as a whole, it does not appear any of the conduct alleged rises to the level of substantive due process violations, which are reserved for the "outer limit on the legitimacy of governmental action," that which is "outrageously arbitrary" or a "gross abuse of discretion." *Corbley v. County of Suffolk,* 45 F. Supp. 3d 276, 282-83 (E.D.N.Y. 2014) (internal quotations omitted).  Therefore, any such claims are dismissed.

### i.      Plaintiff Also Pleads Defamation

Finally, the Court notes that Plaintiff appears to also raise in her complaint state law defamation claims against Defendants McCurty and Mott. *See* Pl. Am. Compl. ¶ 31 ("Defendants McCurty and Mott…falsely alleged in the police report that [Plaintiff] violated an order of protection held by her daughter, even though no such order existed"); ¶ 32 ("Defendant McCurty falsified police reports and defamed Plaintiff's character"); ¶ 44 ("Plaintiff contends that police reports have defamed her character…").  Defendants do not address these claims likely because

Plaintiff did not list them at the end of her complaint.  However, it is the Court's duty to construe a *pro se* Plaintiff's pleadings liberally and, given the language in her complaint, it does appear she is attempting to assert defamation claims.

As the issue has not been briefed and Defendants do not request dismissal of any such claims, I take no action at this time other than to note that the Court will construe the complaint as attempting to assert state law defamation claims in addition to the § 1983 claims.

## CONCLUSION

For the reasons discussed above, I grant Defendant Peress's motion to dismiss and grant in part and deny in part the PWPD Defendants' motion to dismiss.  After disposition of these motions, Plaintiff's surviving claims are: (1) § 1983 false arrest claims against Defendants McCarthy, DeVito, Salerno, and McCurty; (2) § 1983 malicious prosecution claims against Defendants McCarthy, DeVito, and Salerno stemming from the July 2017 incident; (3) A § 1983 malicious prosecution claim against Defendant McCurty stemming from the December 2020 incident; (4) § 1983 unlawful search and seizure claims against all PWPD Defendants; (5) A § 1983 claim of violation of Plaintiff's equal protection rights against Defendant McCarthy; and (6) State law defamation claims against Defendants McCurty and Mott.  All other claims are dismissed.

**SO ORDERED.**

_____/s/_____
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
      September 30, 2022